## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL MOLINA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:23-cv-00257 |
| | ) | |
| | ) | |
| GEORGE M. LITTLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiffs Miguel Molina, Michael Lamb, and Tyron Dixon Tildon brought this *pro se*, putative class action under the Religious Land Use and Institutionalized Person Act (RLUIPA), the Religious Freedom Restoration Act (RFRA), and the First Amendment's Free Exercise and Establishment Clauses. (ECF No. 16 at 16–18).

The individual Defendants are former Secretary of the Pennsylvania Department of Corrections ("DOC") George M. Little, current Secretary Laurel R. Harry, Deputy Superintendent for Central Services at SCI-Forest Ian Gustafson, and SCI-Forest Facility Chaplaincy Program Director S. Shaffer. The DOC is also named as an entity Defendant as to the RLUIPA claim.

Plaintiffs seek relief as to the DOC's now-dormant religious meals policy, the policy colloquially known as or set forth in the "Little Memo" or the "Little Policy." Plaintiffs seek monetary, injunctive, and declaratory relief. (*Id.* at 19).

Defendants have moved to dismiss the Complaint in full. (ECF No. 41). For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I.     BACKGROUND

The Court takes the facts as they are alleged in the relevant papers of record. Plaintiffs were, at the time of the initiation of this suit, each confined at the DOC's SCI-Forest facility and are practicing Muslims. (ECF No. 16 at 2). Only Molina now is in confinement at that institution. They each follow the teachings of the Prophet Muhammad, and those teachings require them to engage in a religious feast during each of Eid al-Fitr and Eid al-Adha. (*Id.* at 2–3). Eid al-Fitr celebrates the end of Ramadan, during which Muslims fast from sunrise to sunset (*Id.* at 3). Eid al-Adha celebrates the willingness of Abraham to sacrifice his son.

Both of these feasts, according to Plaintiffs, require the consumption of halal *meat*, not just a halal-compliant meal, and it is from there that the dispute before the Court has arisen.

Prior to 2023, the DOC's religious meals policy enabled DOC inmates who wished to celebrate Ramadan, the Eid holidays, and other major religious feasts to, within certain limits and subject to a defined protocol, purchase and consume foods of their choice. (ECF No. 42 at 2). Thus, prior to 2023, there was no controversy as to the issues central to this case from Plaintiffs' perspective because they could, consistent with that protocol, purchase halal meat to eat during the Eid holidays.

The DOC changed this policy for 2023. The "Little Memo" or "Little Policy," as it has become known in this case and others like it, instituted a new religious meals policy that essentially eliminated inmate access to specific and special feast foods (*i.e.*, inmates could no longer purchase separate "outside" foods to consume for/during religious holidays) and put other restrictions on the conduct associated with religious meals. (*Id.* at 2; ECF No. 56-8; ECF No. 56-9).

Plaintiffs brought suit under RLUIPA, RFRA, and the First Amendment's Free Exercise and Establishment Clauses to challenge the Little Policy as applied to them and a putative class comprised of all inmates at SCI-Forest. (ECF No. 16 at 6).

Plaintiffs are not the only ones to mount a challenge to the Little Policy. In a separate case before this Court, a plaintiff resident at a different Pennsylvania state correctional facility (SCI-Albion) challenged the Little Policy under RLUIPA and the First Amendment. *Williams v. Little*, No. 23-cv-00037, 2023 WL 4144567, at *1 (W.D. Pa. June 23, 2023) (Hornak, C.J.). Prior to Eid al-Adha 2023, this Court preliminarily enjoined the policy established by the Little Memo as to SCI-Albion only, concluding that the plaintiff in that case had demonstrated a substantial likelihood of success on the merits as to his RLUIPA claim (*id.* at *10) and a likelihood of irreparable harm should the preliminary injunction not issue. (*Id.* at *11).

After the Court's preliminary injunction order in *Williams*, the DOC shifted course. The DOC scrapped the Little Policy and adopted a new policy, the "Shelf Stable Policy." (ECF No. 56-11). The Shelf Stable Policy maintains some of the Little Memo's restrictions on the frequency of religious meals (on a per faith group basis) but allows for qualifying faith groups to, as a group, purchase a single outside shelf stable food item to supplement the mainline (regular) meal provided by the DOC. (*Id.* ¶ 17). The Shelf Stable Policy is currently in effect at all DOC facilities (spare SCI-Albion) as of this year.[1]

After the institution of the Shelf Stable Policy, Plaintiffs moved to preliminarily enjoin the Little Policy (ECF No. 53), but the Court denied that Motion. (ECF No. 57). Upon mailing out the Court's preliminary injunction Opinion to Plaintiffs, the Court learned that Michael Lamb and

---

[1] Though the dormant nature of the Little Policy suggests mootness, Defendants argue that the issues raised by the Little Policy are not moot (ECF No. 56 at 3 n.1), and given that Defendants would essentially have to guarantee that the Little Policy would never be reinstated in order to moot it, *see generally FBI v. Fikre*, 601 U.S. 234 (2024), this action is not moot.

Tyron Dixon Tildon are no longer incarcerated at SCI-Forest. Lamb is now incarcerated at SCI-Mahanoy, and Tildon is incarcerated at SCI-Huntingdon.

Now before the Court is Defendants' Motion to Dismiss. (ECF No. 41). Defendants seek a wall-to-wall dismissal of this action.

## II.   LEGAL STANDARD

To state a plausible claim for relief and thereby survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the non-moving party's factual allegations must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must do more than "plead[] facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting id. at 557). A mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "although a plaintiff is entitled to all reasonable inferences from the facts alleged, 'a plaintiff's legal conclusions are not entitled to deference, and the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 699 (E.D. Pa. 2022) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court is to "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

"When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged." *Kirk v. Caulfield*, No. 21-cv-556, 2022 WL 19406593, at *3 (W.D. Pa. May 17, 2022), *report and recommendation adopted*, 2023 WL 2325049 (W.D. Pa. Mar. 2, 2023) (citing *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003)). However, while *pro se* pleadings are to be construed liberally,

"*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

## III.   DISCUSSION

### a.   RFRA and Establishment Clause Claims

Plaintiffs' RFRA and Establishment Clause Claims fail to state a claim and are dismissed with prejudice, as their shortcomings cannot be repaired by amendment.

Defendants are a state entity and state officials. RFRA does not permit claims against state entities or officials. *City of Boerne v. Flores*, 521 U.S. 507, 532–36 (1997). That claim is dismissed with prejudice, as any effort to amend would be futile.

As for the Establishment Clause claim, Plaintiffs do not plead facts showing what religion the Little Policy established. Plaintiffs only state that the Little Policy, in and of itself, constituted a pattern of observance that prisoners were urged to follow, but the Little Policy is obviously secular in nature. (ECF No. 16 ¶ 58).

Whatever the Little Policy's faults might be, it is plainly secular; it does not attempt to "make a religious observance compulsory." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022) (citing *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)). Rather, the Little Policy, if anything, provides a mechanism for a religious meal observance and restricts the observance of religion, and such an effect is properly addressed via a Free Exercise claim, not an Establishment Clause claim:

> In our Establishment Clause cases we have often stated the principle that the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general. . . .These cases, however, for the most part have addressed governmental efforts to benefit religion or particular religions, and so have dealt with a question different, at least in its formulation and emphasis, from the issue here. Petitioners allege an attempt to disfavor their religion because of the religious ceremonies it commands, and the Free Exercise Clause is dispositive in our analysis. At a minimum, the protections of the Free Exercise Clause pertain if the

law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) (citations omitted). Accordingly, Plaintiff's Establishment Clause claim is dismissed with prejudice, as amendment would be futile.

### b. Claims for Money Damages

With Plaintiffs' RFRA and Establishment Clause Claims dismissed with prejudice, all that remains are Plaintiffs' RLUIPA and Free Exercise Clause claims. Plaintiffs cannot obtain monetary damages for these claims.

### i. Sovereign Immunity

Sovereign immunity bars Plaintiffs' claims for money damages against the DOC and against the individual Defendants in their official capacities.

The Eleventh Amendment bars suit for money damages against states where those states do not consent to suit. U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). While Congress has the power to abrogate sovereign immunity when violations of the Fourteenth Amendment are at issue, its intent to do so must be "unmistakably clear." *Seminole Tribe Fla. v. Florida*, 517 U.S. 44, 56 (1996) (citations omitted).

 RLUIPA did not abrogate sovereign immunity with respect to money damages; money damages are unrecoverable where a plaintiff sues a state entity or a state official in their official capacity under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Similarly, RLUIPA does not impose a condition of individual liability that renders individual defendants vulnerable to claims for money damages in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 155 (3d Cir. 2012). "[I]n other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief." *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017).

As for Plaintiffs' Free Exercise claims for money damages, Congress did not abrogate sovereign immunity for such claims as advanced via § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, to the extent that Plaintiffs sue the DOC or the individual Defendants in their official capacities, monetary damages are unavailable.

### ii.  Qualified Immunity

With sovereign immunity serving as a bar for most of Plaintiffs' claims for monetary damages, Plaintiffs' only potential claim for the recovery of monetary damages is via their Free Exercise claim alleged against the individual Defendants in their individual capacities. However, qualified immunity precludes the recovery of money damages in this respect as well.

A "defendant may raise qualified immunity on the pleadings in a motion to dismiss, on summary judgment, or as an affirmative defense at trial." *Schneyder v. Smith*, 709 F. Supp. 2d 368, 387 (E.D. Pa. 2010), *aff'd*, 653 F.3d 313 (3d Cir. 2011). "The party asserting qualified immunity bears the burden of establishing it." *Rogers v. United States*, No. CA 08-149, 2011 WL 3290208, at *4 (W.D. Pa. June 17, 2011), *report and recommendation adopted*, No. CIV.A. 08-149, 2011 WL 3298422 (W.D. Pa. July 29, 2011).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation and internal marks omitted).

The inquiry when conducting a "clearly established" analysis is a focused and particular one. The Court is to look to "factually analogous Supreme Court precedent, as well as binding opinions from [the Third Circuit]." *Jefferson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021). Then, the

Court is to determine whether a "robust consensus of persuasive authority" from the other Courts of Appeals and district courts demonstrate that a given right was clearly established at the time that it was allegedly violated. *Id.* (citation omitted). However, the Court notes that in more recent cases, the Supreme Court has suggested that only *its* cases can clearly establish a given right:

> Neither Cortesluna nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here. Instead, the Court of Appeals relied solely on its precedent in *LaLonde. Even assuming that Circuit precedent can clearly establish law for purposes of § 1983, LaLonde* is materially distinguishable and thus does not govern the facts of this case.

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (emphasis added). Regardless of which level of precedent the Court is to look to, a case precisely on point is not required, but the Court cannot define the right at issue at a broad level. *United States v. Lanier,* 520 U.S. 259, 270 (1997).

At issue here is whether Plaintiffs had a clearly established right to be served (or to purchase) halal meat in prison for group celebrations of the Eid holidays. Some cases in this Circuit have held that the failure to provide prisoners with halal-conforming meals, generally, does not violate either the Free Exercise Clause or RLUIPA. *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *Riley v. DeCarlo*, 532 F. App'x 23, 28 (3d Cir. 2013). Neither such case is sufficiently squarely on point with this one, however, because both of those cases concern the provision of halal-compliant meals (and under both the Little and Shelf Stable Policies, halal-compliant meals are available) rather than the provision of halal *meat*, and neither concerns the significance of the deprivation of halal *meat* for the Eid feasts.

As to that far more precise question, some courts have concluded that a defendant penal institution's preparation for Eid that did not include optional halal meat menu items might constitute a substantial burden under RLUIPA, *Banks v. Sec'y Pa. Dep't of Corr.*, 601 F. App'x

101, 105–06 (3d Cir. 2015), while others have concluded that the failure to provide Muslim prisoners with an Eid feast could present a First Amendment issue. *Pleasant-Bey v. Shelby Cnty.*, No. 18-6063, 2019 WL 11769343, at *5 (6th Cir. Nov. 7, 2019). Others still have concluded that the failure to provide a religious feast meal violated RLUIPA, *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021), and then-Judge Sotomayor, writing for the Second Circuit, held that prison officials were not entitled to qualified immunity after an Eid feast was delayed by one week. *Ford v. McGinnis*, 352 F.3d 582, 585, 597–98 (2d Cir. 2003).

But this Court has expressly held that claims against prison officials for their failure to provide inmates with halal meat for the Eids were barred by qualified immunity. *Rogers*, 2011 WL 3290208, at *6 ("So then, in January 2006, FCI–McKean officials could have reasonably believed that Plaintiffs had no constitutional right to Halal meat for their Eid celebration."). Other cases have rejected a plaintiff's claims where those claims were based on the deprivation of a religious diet of their choosing. *See Norwood v. Strada*, 249 F. App'x 269, 272 (3d Cir. 2007). And even some of the cases that cut in Plaintiffs' favor on this issue went on to hold that the substantial burden imposed by the DOC's failure to provide halal meat was supported by a compelling interest so as to sustain the at-issue restriction under RLUIPA. *Banks*, 601 F. App'x 101 at 106.

All told, the law in this area cuts both ways and fails to clearly establish the right at issue here for purposes of qualified immunity, especially since no Supreme Court cases discuss this topic. *See Cortesluna*, 595 U.S. at 6. Because of this lack of cohesive case law clearly establishing the federal rights relied upon here, Defendants were not on notice that the Little Policy was violating clearly established constitutional rights, and absent that case law that would provide "notice," Defendants are entitled to the "breathing room" that qualified immunity provides to "make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563

U.S. 731, 743 (2011). Therefore, qualified immunity bars Plaintiffs' Free Exercise claims for money damages against the individual Defendants in their individual capacities. Further, in light of that case law and the essence of the claims advanced here, the Court also concludes that an amendment to those claims could not avoid the qualified immunity bar.

In summary, Plaintiffs cannot recover money damages against any Defendant and as to any federal claim in this action because of the referenced immunity doctrines.

### c. Claims for Equitable Relief

Defendants request that "all claims" be dismissed in this action, (ECF No. 42 at 1, 12), but Defendants do not assert why or how Plaintiffs' claims for equitable relief should be dismissed anywhere in their Brief in Support of Dismissal.[2] Defendants neither explain why the Little Policy is the least restrictive means to achieve a compelling government interest on these issues, nor do they engage in the Free Exercise balancing required under *Turner v. Safley*, 482 U.S. 78 (1987), to explain why Plaintiffs' claims for equitable relief fail to state a claim. Defendants only expressly argue that Plaintiffs' claims for damages should be dismissed and that certain Defendants should be dismissed from the case. (*See id.* at 3 (statement of questions presented not including RLUIPA or Free Exercise merits analyses)).

Defendants' assertion that "all claims" should be dismissed is a "conclusory assertion . . . lacking supporting citations," and such cannot buttress a motion to dismiss. *Burns v. SeaWorld Parks & Ent., Inc.*, 675 F. Supp. 3d 532, 548 (E.D. Pa. 2023) (citing *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997)); *see also Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 511 n.8 (E.D. Pa. 2007) ("Courts in this District have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because 'zeal and advocacy is never an

---

[2] Defendants did not submit a reply brief.

appropriate substitute for case law and statutory authority in dealings with the Court.' These same rationales applicable to briefs in support of motions are equally applicable to opposition briefs.").

Even if Defendants had briefed this issue, as with Plaintiffs' claims for money damages, the reasoning of *Williams v. Little*, No. 23-cv-00037, 2023 WL 4144567 (W.D. Pa. June 23, 2023) governs the outcome of Defendants' Motion to Dismiss Plaintiffs' equitable claims under RLUIPA and the First Amendment. There is no meaningful difference between Plaintiffs' religious beliefs and those of the plaintiff in *Williams*, at least as to the issues raised by the Little Policy, and nor is there a difference in Defendants' asserted justifications for the alleged restriction on Plaintiffs' religious beliefs.

### i. RLUIPA

RLUIPA states that the government shall not

> impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A substantial burden under RLUIPA exists where:

> (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).

The sincerity of Plaintiffs' religious beliefs is not at issue here. Defendants contend that the provision of a halal-compliant meal for the Eid holidays instead of a meal containing halal meat does not constitute a substantial burden under RLUIPA and that compelling interests justify

the practices established by the Little Policy. Neither carries the day, at least at this procedural juncture.

As to the substantial burden prong, Plaintiffs not only plead that their faith requires that they eat halal meat in conjunction with the Eid holidays, but they, in great detail, explain *why* their religion requires the consumption of halal meat at those points in time. (ECF No. 16 at 3–4). The Court must take such assertions as true at this stage of the case, and given that the Little Policy would prevent the consumption of halal *meat* through its ban on the purchase of outside supplemental food, the Little Policy puts substantial pressure on Plaintiffs to modify their religious practices. Such can constitute a substantial burden under RLUIPA.

As to RLUIPA's strict scrutiny prong, as set forth above, Defendants assert no compelling interest to support the Little Policy in their Motion to Dismiss. Even if the Court were to transplant Defendants' arguments from their Response in Opposition to Plaintiff's request for a Preliminary Injunction into the Motion to Dismiss, Defendants would still come up short. The administrative and financial pressures that Defendants rely upon are nearly identical to those that this Court rejected as unpersuasive in *Williams v. Little*. 2023 WL 4144567, at *8–*9. In that case, Defendants failed to demonstrate how the DOC's differential policy for the provision of religion-compliant meals in conjunction with the observance of Passover did not undermine their arguments as to the "least restrictive means" element of RLUIPA relative to the provision of halal meat for Eid observances. Moreover, in *Williams*, this Court was deciding whether a preliminary injunction was appropriate by analyzing whether that Plaintiff was reasonably likely to succeed on the merits. And in that same case, the Court today had to consider those same matters in the context of resolving a motion for summary judgment. *See Williams v. Harry*, 23-cv-57, ECF No. 137 (W.D. Pa. July 26, 2024). Here, as to the pending Motion to Dismiss, the Court is only assessing whether

Plaintiffs have shown a plausible claim for relief. Plaintiffs have met the more deferential standard of review that governs the Court's inquiry at this juncture, and Plaintiffs' claims for injunctive and declaratory relief under RLUIPA and the First Amendment's Free Exercise Clause may proceed further.

## ii.   Free Exercise Clause

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the Free Exercise thereof." U.S. Const. amend. I. The First Amendment is applicable to the states. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Though "[i]nmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion," *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), these rights give way to "the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security." *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000). In *Turner*, the Court explained how courts should analyze Free Exercise challenges brought by inmates:

> [*Turner*] directs courts to assess the overall reasonableness of such regulations by weighing four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate [ ] the prisoner's rights at de minimis cost to valid penological interests.

*Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999) (citation and internal marks omitted). Even under the First Amendment's more forgiving standard, Defendants' Motion to Dismiss Plaintiffs' claims for injunctive relief falls short.

Defendants did not brief this issue. But Plaintiffs' Complaint is sufficient to survive a Motion to Dismiss as to this theory of recovery. First, the Little Policy restricts Plaintiffs' religious exercise by preventing them from consuming halal meat at and/or around the Eid holidays, and this restriction triggers the applicability of the *Turner* factors.

While there seemingly exists at least a general rational connection between the Little Policy and an easing of Defendants' administrative and financial burdens, drawing all reasonable inferences in Plaintiffs' favor as the Court must at this point in the case, a fact finder could also conclude that this connection is arbitrary given that, as this Court concluded in *Williams*, a different religious meals policy existed for Passover, one that, unlike the provisions of the Little Policy applicable to Muslim inmates, provides religious followers of a discrete faith group with the means to acquire religious diet that they need for that holiday observance, according to their religious beliefs.

While Muslim inmates can now purchase shelf stable halal meat as an alternative to engage in their specified religious practices under the Shelf Stable Policy, in a world in which the Little Policy would be the governing standard, the only alternative for Plaintiffs and those similarly situated is to eat halal-compliant meals rather than meals with halal meat. Plaintiffs' sincerely held religious belief is that such a limitation does not meet the constitutional mark.

The DOC contends that the costs of implementing Plaintiffs' proposed plan is not insignificant. But once again, this Court concluded in *Williams* that the separate DOC policies applicable to Passover undermined the efficacy of Defendants' "slippery slope" arguments at the Motion to Dismiss stage. *Williams*, 2023 WL 4144567, at *10. Moreover, the Court concludes that it is more appropriate to address this factor after discovery, when the record is more fully

developed. *See Tormasi v. Langian*, 363 F. Supp. 3d 525, 542 (D.N.J. 2019) (declining to evaluate the strict scrutiny prong of RLUIPA at the motion to dismiss stage).

In addition, the policy in force prior to the Little Policy and the one now in force, the Shelf Stable Policy, demonstrate that there were regulations available that *could* have accommodated Plaintiffs, *i.e.*, under the pre-2023 Policy and the Shelf Stable Policy, Plaintiffs could elect to purchase outside food options to accommodate their religious beliefs. How those matters would factor into a disposition of the merits of the claims that will proceed in this action is yet to be determined, but the consideration of the pending Motion to Dismiss is not the appropriate procedural stage for resolution of that question.

All told, consideration of the *Turner* factors does not weigh in favor of dismissal at this early stage. While Defendants' broad references to administrative and financial costs are facially legitimate and rational as a broadly definitional matter, "[a] decision or practice that represents an 'exaggerated response' to even a legitimate penological concern will not justify an infringement of First Amendment rights." *DeHart*, 227 F.3d at 59 (citation omitted). It strikes the Court that the Little Policy could be found to be the kind of response to a legitimate concern that *DeHart* counseled against. Therefore, Plaintiffs have adequately pled a claim for injunctive relief under the Free Exercise Clause.

## IV.     OTHER CONSIDERATIONS

### a.  Mootness as to Defendant Little

Defendant Little is no longer the acting Secretary of the Department of Corrections. Because Little is no longer serving in this role, and because money damages are unavailable in this action, Defendant Little is dismissed as a Defendant due to mootness.

**b. Personal Involvement as to Defendant Gustafson**

In addition to qualified immunity, another roadblock impairs Plaintiffs' ability to assert §

1983 claims against Defendant Gustafson in his individual capacity: the personal involvement

requirement.

> It is well-established that civil rights claims cannot be premised on a theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, individual liability can be imposed only if the state actor played an "affirmative part" in the alleged misconduct, either through personal direction of or actual knowledge and acquiescence in the deprivation. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir. 1986) (quoting *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)). Alleging a mere hypothesis that an individual defendant had personal knowledge of or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *See Rode,* 845 F.2d at 1208.

*Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 526–27 (E.D. Pa. 2015), *aff'd sub nom.*

*Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91 (3d Cir. 2016).

Here, Plaintiffs do not sufficiently allege a basis for liability as to Defendant Gustafson.

Plaintiffs merely assert that, by virtue of his employment with the DOC, Gustafson is responsible

for the existence and implementation of the Little Policy. In the operative Complaint, Plaintiffs

fail to connect Gustafson's job and the responsibilities flowing therefrom to the alleged misconduct

here (ECF No. 16 ¶ 46), and such fails to support a § 1983 claim. While Plaintiffs do reference

and incorporate a memo written by Gustafson regarding the Little Policy in their Response in

Opposition to the Motion to Dismiss (ECF No. 50-2), Plaintiffs do not discuss the contents of that

memo or attach it as an exhibit in the Complaint, and "[i]t is axiomatic that the complaint may not

be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507

F.3d 188, 202 (3d Cir. 2007) (citation omitted). Because the Complaint does not contain or reflect

the contents of that memo, Plaintiffs have not plausibly pled the personal involvement requirement

as to Gustafson, and he is therefore dismissed from the action, but without prejudice, as the Court

cannot conclude at this juncture that failure to amend would be futile given the existence of the Gustafson memo.

### c. The DOC as a Party

Defendants assert that the DOC should be dismissed as a party from the action. They contend that neither RLUIPA nor § 1983 support claims against a state entity. (ECF No. 42 at 5). However, the DOC is only named as a Defendant as to the RLUIPA claim (ECF No. 16 ¶ 63), so the Court need only consider whether the DOC can be named as a defendant under RLUIPA.

As set forth in Section III.b, Congress did not abrogate sovereign immunity with respect to claims for money damages under RLUIPA. *Sossamon*, 563 U.S. at 293. Such damages are unavailable in this action. Thus, the remaining issue is whether the DOC can be named as a Defendant where only equitable relief is sought under RLUIPA.

Generally, sovereign immunity extends to claims for equitable relief. *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) ("Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State."). However, congressional abrogation of sovereign immunity for suits seeking prospective injunctive relief is not subject to the same stringent standard that congressional abrogation of sovereign immunity that applies to claims for damages: "a waiver of sovereign immunity to other types of relief does not waive immunity to damages," *Sossamon*, 563 U.S. at 285 (collecting cases), and *Sossamon* did not concern whether Congress abrogated sovereign immunity for claims for injunctive relief. *Id.* at 293.

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution[.]" 42 U.S.C. § 2000cc-1. The term

"government," despite Defendants' assertions to the contrary,[3] is not limited to state *officials*: "The term 'government' means a State, county, municipality, or other governmental entity created under the authority of a State; any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and any other person acting under color of State law[.]" 42 U.S.C. § 2000cc-5(4). RLUIPA then provides that a person may "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

Given that a government entity is, by RLUIPA's plain text, subject to RLUIPA's substantive provisions, and that the interpretive question in *Sossamon* as to the phrase "appropriate relief" was "not whether Congress has given clear direction that it intends to *exclude* a damages remedy, . . . but whether Congress has given clear direction that it intends to *include* a damages remedy," *Sossamon*, 593 U.S. at 289, both RLUIPA itself and *Sossamon* suggest that RLUIPA permits claims for injunctive relief against a state entity. Thus, the Court cannot conclude that sovereign immunity bars Plaintiffs' claims for injunctive relief against the DOC under RLUIPA.

### d.  Transfer of Plaintiffs Lamb and Tildon

After the issuance of the Court's preliminary injunction Opinion in this case, the Court learned that Plaintiffs Lamb and Tildon are no longer incarcerated at SCI-Forest. (*E.g.*, ECF No. 66). Lamb is now incarcerated at SCI-Mahanoy, and Tildon is incarcerated at SCI-Huntingdon.

This presents mootness problems in three ways. First, where an incarcerated individual sues a prison official who is associated with one facility and that incarcerated individual is later moved to a different facility, the claims against that official are moot. *See Banks*, 601 F. App'x at 103 ("The only relief potentially available to Banks for his RLUIPA claims is injunctive or declaratory, but to the extent that Banks seeks that relief against defendants at SCI—Retreat, his

---

[3] ECF No. 42 at 5.

claims are moot because he was transferred to SCI—Somerset."). Therefore, the claims Plaintiffs Lamb and Tildon allege against Defendants Gustafson and Schaffer are moot.

Second, the allegations in the Complaint are centered on a purported class of individuals incarcerated at SCI Forest, and all three Plaintiffs desire to be appointed as representatives of that class. (*E.g.*, ECF No. 16 at 7–8). Because the allegations of fact are connected to this purported class of prisoners incarcerated at SCI-Forest, and because the relief Plaintiffs seek is with respect to SCI-Forest, there is a mismatch between the allegations in the Complaint and the current residences of Plaintiffs Lamb and Tildon.

Third, and importantly, the Prison Litigation Reform Act (PLRA) provides that:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. . . .

18 U.S.C. § 3626(a)(1). All the allegations and claims here are directed at SCI-Forest, but Plaintiffs Lamb and Tildon no longer reside there, cannot seek relief as to the situation at SCI-Forest, and under the relevant provisions of the PLRA, the Court cannot broaden any relief in this case to cover those other institutions.

In light of these considerations, Plaintiffs Lamb and Tildon are dismissed from the action without prejudice due to mootness and the PLRA's command that remedies shall be narrowly tailored in the penological context. Should they return to residence at SCI-Forest, then these disabilities might be removed.

### e. Class Certification

Though the Complaint avers that Plaintiffs seek to represent a class of all inmates at SCI Forest (ECF No. 16 at 6–7), Plaintiffs have not yet sought class certification *See* Fed. R. Civ.

P.23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."). The Court will defer a formal definitive ruling on this issue, but the Court notes that it is unlikely that a class can be certified in this action given Plaintiffs' *pro se* status. *Jones v. Cnty. of Allegheny*, No. 21-cv-1094, 2021 WL 4340498, at *3. (W.D. Pa. Sept. 23, 2021) ("While the issue of class certification is not before the Court at this time, given that there has been no formal request for such certification, the Court would nevertheless note that class certification would not be appropriate in this case given that all plaintiffs are *pro se* and the majority, if not all, are incarcerated."). The Court does note that class certification is of little practical consequence in this action, as the scope of relief would not change because any potential prospective relief here would implicate and affect the DOC's policies with respect to SCI-Forest, not just the DOC's policies as applied to Plaintiff Molina. Thus, class certification is likely unnecessary to afford full relief, if Plaintiff Molina prevailed on one or more the remaining claims.

## V.      CONCLUSION

In summary, the Court will resolve the pending Motion to Dismiss as follows: (1) Plaintiffs' RFRA and Establishment Clause claims are dismissed with prejudice, as further amendment would be futile; (2) Plaintiffs' claims for monetary damages under RLUIPA and the Free Exercise Clause are dismissed with prejudice because of immunity doctrines, and amendment would be futile; (3) Defendants' Motion to Dismiss Plaintiffs' claims for injunctive relief under RLUIPA and the Free Exercise Clause is DENIED; (4) Defendant Little is dismissed from this action due to mootness and is not a proper party to this action unless he returns to a policymaking role as to the Little Policy; (5) Defendant Gustafson is dismissed as a Defendant without prejudice due to inadequate personal involvement; (6) Defendants' Motion to Dismiss the DOC as a named

defendant is DENIED; and (7) Plaintiffs Lamb and Tildon are dismissed from the action without prejudice due to their relocation to other SCIs, as they are not proper Plaintiffs in this action unless they are resident at SCI-Forest.

Any Amended Complaint filed by Plaintiff Molina must be filed within thirty (30) days of the date of this Opinion and Order. Failure to submit an Amended Complaint within that time frame will result in conversion of the dismissals without prejudice to dismissals with prejudice without further Order or notice by the Court. If Plaintiff Molina chooses not to file an amended Complaint, Defendants shall file their Answer within thirty (30) days of the expiration of the period allotted for amendment.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  July 26, 2024